Mark S. Cohen
Stephen M. Sinaiko
Luke M. Appling
COHEN & GRESSER LLP
800 Third Avenue
New York, New York 10022
(212) 957-7600

Attorneys for The Children's Aid Society

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x

Erickson Ocasio,                               :

             Plaintiff,          :

      - against -                        :

THE CHILDREN'S AID SOCIETY,      :

           Defendant.        :

—————————————————————————— x

Case No. 19 Civ. 8852 (JMF) (GWG)

ORAL ARGUMENT REQUESTED

Memorandum of Law of The Children's Aid
Society in Support of its Motion to Dismiss

# Table of Contents

Page

Table of Contents......................................................................................................... i

Table of Authorities .....................................................................................................ii

Preliminary Statement...................................................................................................1

Factual Background .......................................................................................................3

Argument ......................................................................................................................5

I.   THE COMPLAINT DOES NOT SUFFICIENTLY PLEAD A
     NEGLIGENCE CLAIM AGAINST CHILDREN'S AID..................................6

II.  THE COURT SHOULD DISMISS MR. OCASIO'S CLAIM FOR
     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS........................14

        A.  New York Law Bars Duplicative Claims for
            Intentional Infliction of Emotional Distress..................................14

        B.  Mr. Ocasio Has Not Sufficiently Alleged a Claim
            for Intentional Infliction of Emotional Distress............................15

## Table of Authorities

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................5

*Burlington Indus. v. Ellerth,*
    524 U.S. 742 (1998) ..........................................................................7

*Carney v. Bos. Mkt.,*
    2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) ..................................5

*Chanko v. Am. Broad. Cos.,*
    27 N.Y.3d 46 (2016) .......................................................................15

*Dia CC. v. Ithaca City School Dist.,*
    304 A.D.2d 955 (3d Dep't 2003) .....................................................9

*Doe v. Alsaud,*
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) .......................7, 10, 11, 12, 13

*Doe v. City of New York,*
    2013 WL 796014, at (S.D.N.Y. Mar. 4, 2013) ................................5

*Doe v. Guthrie Clinic, Ltd.,*
    2012 WL 531026 (W.D.N.Y. Feb. 17, 2012) .................................11

*Doe v. N.Y.C. Dep't of Educ.,*
    126 A.D.3d 612 (1st Dep't 2015) (dismissing ................................7

Doe v. New York City Dept. of Social Services,
    709 F.2d 782 (2d Cir. 1983) ...........................................................13

*Ehrens v. Lutheran Church,*
    385 F.3d 232 (2d Cir. 2004) .........................................................8, 9

*Gray v. Schenectady City School Dist.,*
    86 A.D.3d 771 (3d Dep't 2011) ................................................16, 17

*Herlihy v. Metro. Museum of Art,*
    214 A.D.2d 250 (1st Dep't 1995) ...................................................14

*Hopper v. Banana Republic, LLC,*
    2008 WL 490613 (S.D.N.Y. Feb. 25, 2008) .............................11-12

*Jackson v. New York Univ. Downtown Hosp.*,
  2007 WL 4616377 (Sup. Ct. Kings Co. Oct. 24, 2007) ......................................6, 7, 8

*Jamal P. v. City of New York*,
  24 A.D.3d 301 (1st Dep't 2005) ..................................................................................9, 10

*Johnson v. United States*,
  788 F.2d 845 (2d Cir. 1986) ........................................................................................11

*Judith M. v. Sisters of Charity Hosp.*,
  93 N.Y.2d 932 (1999) ....................................................................................................7

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*,
  229 A.D.2d 159 (2d Dep't 1997) ..................................................................................7

*Khapesi v. City of New York*,
  2014 WL 2605342 (S.D.N.Y. June 10, 2014) ..............................................................11

*Liang v. Rosedale Group Home*,
  19 A.D.3d 654 (2d Dep't 2005) ....................................................................................10

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
  256 A.D.2d 269 (1st Dep't 1998) ..................................................................................14

*Mirand v. City of New York*,
  84 N.Y.2d 44 (1994) ......................................................................................................10

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) ..............................................................................................14, 15, 16

*Noonan v. City of New York*,
  2015 WL 3948836, at (S.D.N.Y. June 26, 2015) ..........................................................5

*Papelino v. Albany College of Pharmacy*,
  633 F.3d 81 (2d Cir. 2011) ............................................................................................13

*Pater v. City of Buffalo*,
  141 A.D.3d 1130 (4th Dep't 2016) ................................................................................8

*Romero v. City of New York*,
  839 F. Supp. 2d 588 (E.D.N.Y. 2012) ..........................................................................15

*Ross v. Mitsui Fudosan, Inc.*,
  2 F. Supp. 2d 522 (S.D.N.Y. 1998) ..............................................................................12

*Sato v. Correa,*
  272 A.D.2d 389 (2d Dep't 2000) ........................................................................9

*Sheridan v. United States,*
  487 U.S. 392 (1988) ........................................................................................11

*Siegel v. HSBC North America Holdings, Inc.,*
  933 F.3d 217 (2d Cir. 2019) ..............................................................................3

*Stuto v. Fleishman,*
  164 F.3d 820 (2d Cir. 1999) ............................................................................15

*Swarna v. Al-Alwadi,*
  622 F.3d 123 (2d Cir. 2010) ..............................................................................7

*Sweeney v. Prisoners' Legal Servs. of New York, Inc.,*
  146 A.D.2d 1 (3d Dep't 1989) ..........................................................................14

*Tomka v. Seiler Corp.,*
  66 F.3d 1295 (2d Cir. 1995) ..............................................................................7

*Whitfield v. Board of Education of the City of Mount Vernon,*
  14 A.D.3d 552 (2d Dep't 2005) .....................................................................9-10

*Wolkstein v. Morgenstern,*
  275 A.D.2d 635 (1st Dep't 2000) .....................................................................14

<u>Statutes and Rules</u>

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 5

N.Y. C.P.L.R. § 214-g ....................................................................................1-2, 3

N.Y. Social Servs. L. § 413 ...............................................................................13

N.Y. Social Servs. L. § 420 ...............................................................................13

<u>Session Laws</u>

2019 N.Y. Sess. Laws S. 2440, Ch. 11 ................................................................3

Defendant The Children's Aid Society ("Children's Aid") respectfully submits this memorandum of law in support of its motion to dismiss the complaint in this action ("Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>Preliminary Statement</u>

Children's Aid is a not-for-profit organization whose mission is helping children in poverty succeed and thrive, with the vision of enabling them to realize their fullest potential and lead healthy, successful and productive lives. To that end, Children's Aid works in New York City's most under-resourced neighborhoods to support youth from early childhood through high school by providing programs in a variety of areas, including nutrition, health care, education, college planning and enrichment. Over the course of more than 165 years since its founding in 1853, Children's Aid has grown to become one of New York City's leading child-focused charities. During the year ended June 30, 2018, Children's Aid programs reached over 45,000 New York City children and their family members.

In this action, plaintiff Erickson Ocasio alleges that, during a three week period while he attended Wagon Road Camp, a sleep-away camp operated by Children's Aid, he was sexually abused on five occasions by a camp counselor. The Complaint identifies the alleged abuser only by a first name -- Charles or "Chip" -- and refers to him generally as "John Doe." This absence of identifying details is not surprising, given that the abuse allegedly occurred over four decades ago, in July and August 1978.

More than 41 years after the alleged events, Mr. Ocasio now asserts claims against Children's Aid under New York's recently enacted Child Victims Act (the "CVA"). The CVA revives otherwise time-barred claims that seek recovery for harm suffered as a result of conduct that would constitute certain sexual offenses under the New York Penal Law. CPLR

214-g.  As a result, Children's Aid must defend against Mr. Ocasio's claims without the benefit of percipient witnesses and documentary evidence that would have been available during the original limitations period.

Importantly, Mr. Ocasio does not claim that Children's Aid has *respondeat superior* liability for the abuse that "John Doe" allegedly perpetrated on him.  Nor could he, because settled New York law would preclude any such liability.  Rather, Mr. Ocasio seeks recovery on the theories that (a) through negligence, Children's Aid failed to prevent the alleged abuse, and (b) Children's Aid intentionally inflicted alleged emotional distress on him.

Mr. Ocasio's claims fail as a matter of law for several reasons.  *First*, Mr. Ocasio's catch-all cause of action for negligence -- asserting that Children's Aid failed to prevent the alleged abuse by negligently hiring, supervising or retaining Doe, or by negligently failing to protect Mr. Ocasio from Doe while he attended Wagon Road Camp -- fails to state a claim in the absence of sufficient, non-conclusory allegations that Children's Aid was on notice, before the alleged abuse, that Doe had a propensity for the behavior of which Mr. Ocasio accuses him.  (*See* Point I, *infra*).  *Second*, contrary to New York law, Mr. Ocasio's claim for intentional infliction of emotional distress ("IIED") inaptly duplicates his negligence claim.  (*See* Point II(A), *infra*). *Third*, apart from its duplication of the negligence claim, Mr. Ocasio's IIED claim fails in the absence of any allegation that Children's Aid engaged in intentional misconduct meeting the stringent "outrageousness" standard, a central element of IIED claims under New York law. (*See* Point II(B), *infra*).

Accordingly, Children's Aid respectfully requests that the Court grant its motion and dismiss this action in its entirety.

<u>Factual Background</u>[1]

<u>The New York Child Victims Act</u>

On February 14, 2019, New York State enacted the CVA. *See* 2019 N.Y. Sess. Laws S. 2440, Ch. 11 (McKinney). The CVA permits assertion, during a one-year window, of otherwise time-barred claims for "intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute" certain sexual offenses under specifically enumerated sections of New York's Penal Law that were committed when the claimant was less than 18 years of age. CPLR 214-g. The one-year window under the CVA opened on August 14, 2019. *Id.*

<u>The Current Litigation</u>

Mr. Ocasio, currently 52 years old, asserts that he attended Wagon Road Camp over 41 years ago, between the third week of July 1978 and the first week of August 1978. (Compl. ¶ 13). The Complaint alleges that, during that period, a camp counselor sexually abused Mr. Ocasio five times. (*Id.* ¶¶ 19-26). The Complaint does not provide the full name of the alleged abuser. Rather, it alleges that the alleged abuser's first name was Charles and that his nickname was "Chip," and subsequently refers to him as "John Doe." (*Id.* ¶ 7).

According to the Complaint, the first incident of abuse took place in a bathroom at Wagon Road Camp. (*Id.* ¶ 19). The next three alleged incidents took place in "a private room with a bed that was located in the back of" the cabin that Doe was assigned to monitor and that "had a door that could be closed to separate it from the main room of the cabin." (*Id.* ¶¶ 17-18,

---

[1]     Solely for purposes of this motion, Children's Aid draws its statement of the facts from the Complaint. *See, e.g., Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 220 n.3 (2d Cir. 2019) (affirming dismissal of complaint for failure to state a claim and noting that "[a]lthough the defendants dispute certain allegations, we accept them as true for the purposes of reviewing the challenged judgment of dismissal, except where wholly conclusory").

22). The final alleged incident of abuse took place at night in "an area near a parking lot." (*Id.* ¶¶ 24-26).

The Complaint alleges that Children's Aid "negligently retained John Doe with knowledge of his propensity for the type of behavior that resulted in Plaintiff's injuries in this action." (*Id.* ¶ 48). However, beyond that assertion, which is conclusory, the Complaint contains no allegation of any particular instance of sexual misconduct by Doe of which Children's Aid was aware at the time it hired him. Indeed, contradicting the notion that Children's Aid knew of Doe's purported propensities, the Complaint also alleges -- in the same paragraph -- that Children's Aid "failed to investigate John Doe's past and/or current history of sexual abuse" and "should have made an appropriate investigation of John Doe and failed to do so." (*Id.*).

While the Complaint alleges in conclusory fashion that Children's Aid "knew or reasonably should have known about the inappropriate and unlawful sexual activities of John Doe," it contains no allegations of particular facts that would have put Children's Aid on notice of any sort of misconduct -- let alone sexual misconduct -- by Doe in advance of any of the five alleged incidents of abuse. (*Id.* ¶ 34). There is no allegation that Children's Aid was aware of any sexual misconduct, or that Doe had engaged in any such misconduct, before Doe's initial alleged abuse of Mr. Ocasio. Nor does the Complaint assert that anyone witnessed any of the first four instances in which Doe allegedly abused Mr. Ocasio. Indeed, according to the Complaint, three of those four incidents occurred in a private room to which Doe had access. (*Id.* ¶¶ 18, 22). Moreover, while the Complaint alleges that an unidentified "female camp counselor" observed Doe abusing Mr. Ocasio "near a parking lot," but did not intervene, that allegation pertains to the final instance of alleged abuse and also lacks sufficient factual detail. (*Id.* ¶¶ 26,

- 4 -

27). Accordingly, that allegation cannot establish that Children's Aid had notice that Doe posed a danger such that it could have prevented *any* of the abuse that Doe allegedly perpetrated against Mr. Ocasio.

On the basis of these allegations, Mr. Ocasio asserts two causes of action. First, he claims that Children's Aid is liable for negligently failing to prevent Doe from sexually abusing him. Second, Mr. Ocasio claims that Children's Aid is liable for intentionally inflicting emotional harm on him. Neither claim can survive this motion.

<u>Argument</u>

The Court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state[d] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's complaint must "'raise a right to relief above the speculative level,' requiring 'more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action.'" *Noonan v. City of New York*, 2015 WL 3948836, at *2 (S.D.N.Y. June 26, 2015) (dismissing claim concerning alleged acts of sexual abuse) (quoting *Twombly*, 550 U.S. at 555). Under this standard, "mere conclusory statements[] do not suffice." *Doe v. City of New York*, 2013 WL 796014, at *2 (S.D.N.Y. Mar. 4, 2013). Moreover, in assessing a complaint under Rule 12(b)(6), courts give "no effect to legal conclusions couched as factual allegations." *Carney v. Bos. Mkt.*, 2018 WL 6698444, at *1 (S.D.N.Y. Dec. 20, 2018). Thus, Rule 12(b)(6) requires dismissal when, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Those standards call for dismissal of Mr. Ocasio's Complaint in its entirety.

## I. THE COMPLAINT DOES NOT SUFFICIENTLY PLEAD A NEGLIGENCE CLAIM AGAINST CHILDREN'S AID

Mr. Ocasio's first cause of action fails to state a claim upon which relief can be granted. In this cause of action, Mr. Ocasio asserts a broad range of purported tort duties that he claims Children's Aid violated -- including in a single, catch-all paragraph that goes on for more than two pages -- without any supporting factual allegations. (Compl. ¶ 55). These allegations distill to assertions that Children's Aid negligently hired, retained and supervised Doe, and negligently failed to protect Mr. Ocasio from Doe while he was at Wagon Road Camp. Thus, the Complaint asserts that Children's Aid had duties "to screen, perform background checks of, train and monitor its employees," "to protect [Mr. Ocasio] from injury, including sexual abuse and molestation," and "to properly supervise [Mr. Ocasio] and provide a reasonably safe environment for [Mr. Ocasio]." (Compl. ¶¶ 42, 44, 45). But under well-settled New York law, an employer cannot be liable for negligent hiring, supervision or retention unless it had *advance* notice of the employee's propensity for the type of misconduct that ultimately harmed the plaintiff. Thus, courts decline to impose any "common-law duty to actively investigate prospective employees unless the employe[r] is aware of facts that would lead a reasonably prudent employer to probe that employee." *Jackson v. New York Univ. Downtown Hosp.*, 2007 WL 4616377, at *2, *4 (Sup. Ct. Kings Co. Oct. 24, 2007), *aff'd*, 69 A.D.3d 801 (2d Dep't 2010). That same sort of advance notice is an element, under New York law, of a claim for failure to protect. Because the Complaint offers no facts to support its allegations that Children's Aid had notice of Doe's supposed propensity for abuse before the alleged instances in which he abused Mr. Ocasio, the Court should dismiss Mr. Ocasio's first cause of action.[2]

---

[2] The Complaint also fails as a matter of long-settled New York law to the extent the Court construes the allegation that Doe "engaged in the wrongful acts while acting in the course and scope of his employment with [Children's Aid]" as seeking to hold Children's Aid

New York courts have consistently found that notice of an employee's predisposition for abuse is a key element of a claim for negligent hiring. Thus, in *Jackson*, the plaintiff alleged that a nurse anesthetist assaulted her while she was a hospital patient awaiting surgery in an operating room. *Jackson*, 2007 WL 4616377, at *2. Based on those allegations, the plaintiff sued the hospital for, among other things, negligent hiring of the nurse anesthetist. *Id*. The court noted that "[t]here is no common-law duty to actively investigate prospective employees unless the employe[r] is aware of facts that would lead a reasonably prudent employer to probe that employee." *Id*. Because the hospital's personnel file for the nurse anesthetist "contain[ed] no indication of any propensity by [him] to engage in sexual misconduct," the court granted the hospital's motion for summary judgment on the negligent hiring claim. *Id*. at *3-*4; *see also*, *e.g.*, *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 163-64 (2d Dep't 1997) (granting motion to dismiss negligent hiring claim and holding that "there is no common-law duty to institute specific procedures for hiring employees unless the employer

responsible for Doe's alleged abuse of Mr. Ocasio on a *respondeat superior* theory. (Compl. ¶ 36). Over 20 years ago, the New York Court of Appeals -- applying the well-established principle that where "an employee for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable" -- refused to hold a hospital vicariously liable for a sexual assault perpetrated on the plaintiff by an orderly, reasoning that "[a]ssuming plaintiff's allegations of sexual abuse are true, it is clear that the employee here departed from his duties for solely personal motives unrelated to the furtherance of the Hospital's business." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999). Subsequently, federal and state courts applying New York law have uniformly refused to hold employers vicariously liable for sexual assaults by their employees. *See*, *e.g.*, *Swarna v. Al-Alwadi*, 622 F.3d 123, 144-45 (2d Cir. 2010) ("an employer 'is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business'") (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault."); *Doe v. N.Y.C. Dep't of Educ.*, 126 A.D.3d 612, 612 (1st Dep't 2015) (dismissing claim seeking to hold department of education vicariously liable for teacher's sexual intercourse with student because teacher's conduct, as a matter of law, was not in furtherance of school business and was outside the scope of his employment).

knows of facts that would lead a reasonably prudent person to investigate the prospective employee").

Courts have ruled similarly in the context of claims for negligent retention and supervision. For example, in *Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004), the plaintiff alleged that, as a minor, he had been the victim of sexual abuse at the hands of an individual who worked for the defendants. The Second Circuit noted that New York law requires a plaintiff suing for negligent retention or supervision to show, among other things

> (1) that the tort-feasor and the defendant were in an employee-employer relationship, . . . (2) that the employer *'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence,* . . . and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Id.* at 235 (citations omitted) (emphasis added). Noting the absence of "evidence from which a reasonable juror could infer that the defendants, at any time prior to the relevant incident, knew or should have known of [the alleged attacker's] propensity to assault minors or otherwise engage in inappropriate sexual conduct," the court affirmed summary judgment for the defendants. *Id.*; *see also*, *e.g.*, *Pater v. City of Buffalo*, 141 A.D.3d 1130, 1131 (4th Dep't 2016) (affirming summary judgment for defendants in action for negligent retention and supervision based on sexual assaults allegedly perpetrated by police officer where plaintiff failed to make required "showing that the employer was on notice of the relevant tortious propensit[y] of the wrongdoing employee") (citation omitted); *Jackson*, 2007 WL 4616377, at *3 (granting summary judgment for defense on negligent retention and supervision claims where plaintiff did not make necessary showing "that the employer knew or should have known of the employee's

propensity for that conduct which caused the injury") (citing *Sato v. Correa*, 272 A.D.2d 389, 389-90 (2d Dep't 2000)).[3]

And to the extent Mr. Ocasio asserts a "failure to protect" claim, the Appellate Division's ruling in *Jamal P. v. City of New York*, 24 A.D.3d 301 (1st Dep't 2005), is instructive. There, a boy and his mother sued the operators of a foster care facility, alleging that while the boy was a resident of the facility, he had suffered sexual assaults on separate occasions by two other residents. *Id*. at 302-03. Based on those allegations, the plaintiffs asserted a claim against the facility's operators for "negligence in the care and supervision of [the boy]." *Id*. at 303. The Appellate Division noted that plaintiffs' claim for "ordinary negligence in failing to protect the infant plaintiff against alleged sexual assaults" required them to prove, among other things, that the facility's operators had "actual or constructive notice that such assaults might be made upon the infant plaintiff so as to give rise to a duty to protect him." *Id*. The court went on to reason that, because the two incidents involved attacks on the plaintiff by two different residents, the facility operator had no prior knowledge that the resident involved in the second incident might attack the plaintiff. *Id*. at 303-04 (citing *Whitfield v. Board of Education of the City of Mount*

---

[3]   Mr. Ocasio's allegations that Children's Aid stood in a fiduciary or *in loco parentis* relationship with him do not alter the analysis. (Compl. ¶¶ 44, 45). Even if a fiduciary relationship existed between Mr. Ocasio and Children's Aid, Mr. Ocasio would still bear the burden to plead and prove that Children's Aid had advance notice of a propensity on Doe's part to engage in sexual assaults. *See Ehrens*, 385 F.3d at 235 n.2 ("To the extent that [plaintiff's] complaint could be read to assert a claim against the defendants for breach of a fiduciary relationship . . . the defendants' lack of actual or constructive knowledge of [the attacker's] sexual proclivities would also be fatal to this claim."). Likewise, while a person with custody of a minor has a duty to act as "a parent of ordinary prudence placed in the identical situation and armed with the same information," failure to prevent "an [employee's] intentional acts" violates that duty only if the person had "prior knowledge of the [employee's] propensity or likelihood to engage in such conduct." *Dia CC. v. Ithaca City School Dist.*, 304 A.D.2d 955, 956 (3d Dep't 2003) (granting summary judgment for defendant school district, in action based on teacher's alleged sexual abuse of student, absent "evidence that the District had any knowledge or notice that the . . . teacher may molest a student").

*Vernon*, 14 A.D.3d 552, 553 (2d Dep't 2005)).  The court thus held that the facility operator

"lacked 'sufficiently specific knowledge or notice' of the third-party conduct that is alleged to

have resulted in injury so as to cast it in liability."  *Id*. at 304 (quoting *Mirand v. City of New

York*, 84 N.Y.2d 44, 49 (1994)); *see also Liang v. Rosedale Group Home*, 19 A.D.3d 654, 655

(2d Dep't 2005) ("in order to find that a school or a foster care facility has breached its duty to

adequately supervise the children entrusted to its care, a plaintiff must establish that the school or

facility 'had sufficiently specific knowledge or notice of the dangerous conduct which caused

injury; that is, that the third-party acts could reasonably have been anticipated.'") (quoting

*Mirand*, 84 N.Y.2d at 49).

    Finally, this Court's decision in *Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y.

2014) ("*Alsaud*"), demonstrates that conclusory allegations that a defendant was on notice of an

alleged attacker's propensity for misconduct are insufficient to avoid dismissal under Rule

12(b)(6).  The plaintiff in *Doe* asserted various claims against the defendant, including claims for

negligent retention and negligent supervision, arising from an alleged incident in which an

employee of the defendant had invited the plaintiff back to his hotel room where he drugged and

raped her in the presence of other employees of the defendant.  *Id*. at 676.  In hopes of satisfying

the notice element of her claims, the plaintiff alleged that "[d]uring the course of [the attacker's]

employment, Defendants . . . knew or should have known of [his] predisposition for abusing

women, his violent propensities, and his status as a sexual predator, yet did nothing to stop it,"

and that "[a] reasonable background check would have reflected the same."  *Id*. at 680.  The

Court found those allegations insufficient because plaintiff had not alleged "(i) a single prior act

or allegation of sexual misconduct committed by [the employee], or (ii) a fact suggesting that

[the defendant] knew or should have known of any such prior acts."  *Id*.  The Court further held

insufficient plaintiff's allegation that "'a reasonable background check' would have revealed [the employee's] predisposition for sexual assault because no facts, specific or otherwise, are alleged as to what such a background check would have in fact revealed." *Id*. at 681. Finally, the Court found plaintiff's allegation that employees of the defendant in addition to the attacker were present during the incident "[did] not show that [the defendant] knew or should have known before the attack that [its employee] was predisposed to sexual violence." *Id*. at 682. Concluding that plaintiff's complaint "does not contain anything more than bare legal conclusions," the Court dismissed her negligent supervision and retention claims as "inadequately alleged." *Id*. at 683-84.

   Other decisions in this Circuit have likewise held conclusory allegations of notice on the part of the defendant inadequate to avoid dismissal of claims that a defendant negligently failed to prevent tortious conduct by its employees or third parties. *See Johnson v. United States*, 788 F.2d 845, 854 (2d Cir. 1986) (rejecting negligence claim against government arising from assault by employee where plaintiffs alleged that defendant had "notice or knowledge of [attacker's] criminal and perverted propensities and tendencies" but "provided no factual basis for this conclusion"), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988); *Khapesi v. City of New York*, 2014 WL 2605342, at *11 (S.D.N.Y. June 10, 2014) (conclusory allegations that city was aware of sexual misconduct by prison employee insufficient to avoid dismissal of negligent hiring, retention and supervision claims); *Doe v. Guthrie Clinic, Ltd.*, 2012 WL 531026, at *7 (W.D.N.Y. Feb. 17, 2012) (dismissing negligent hiring claim in absence of any "credible, nonconclusory allegation that any defendant knew or should have known that [tortfeasor] would breach her duty of confidentiality"); *Hopper v. Banana Republic, LLC*, 2008 WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (dismissing negligent hiring claim

pursuant to Rule 12(b)(6) when "the complaint includes only speculative and implausible facts concerning [the employee's] propensities and [the employer's] knowledge of them"); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 532-33 (S.D.N.Y. 1998) ("To survive a motion to dismiss a claim of negligent supervision, a plaintiff must plead *facts* that show that the employer knew of the employee's propensity for the type of behavior that caused plaintiff's harm. . . . Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss.") (emphasis added) (citations omitted).

The reasoning and holding in *Alsaud* -- as well as the other cases we have cited -- compel the conclusion that Mr. Ocasio has not sufficiently pleaded the notice element of his negligence claim against Children's Aid.  In support of that element, Mr. Ocasio alleges that:

- Children's Aid "retained . . . Doe with knowledge of his propensity for the type of behavior that resulted in Plaintiff's injuries," and "through the exercise of reasonable diligence should have known of" that propensity (Compl. ¶ 48);

- "An appropriate investigation would have revealed the unsuitability of . . . Doe for continued employment and it was unreasonable for [Children's Aid] to retain . . . Doe in light of the information it knew or should have known"  (Compl. ¶ 49);

- Children's Aid "became aware, or should have become aware of . . . Doe's propensity to commit sexual abuse" (Compl. ¶ 51); and

- Children's Aid "knew or should have known that it had numerous agents, servants and/or employees who had sexually molested children." (Compl. ¶ 52).

But as in *Alsaud*, Mr. Ocasio's allegations are conclusory and cannot substitute for factual allegations that identify prior acts of sexual misconduct by Doe; suggest that Children's Aid knew or should have known of any such prior acts; or even identify facts about Doe that Children's Aid would have learned, or been on notice of, if it had further investigated him.  And the Complaint not only contains no allegations that Doe engaged in any acts of sexual

misconduct before his initial alleged encounter with Mr. Ocasio, but also does not assert that anyone witnessed the first four encounters between Doe and Mr. Ocasio that allegedly occurred. Moreover, again as in *Alsaud*, the allegation that an unidentified female camp counselor witnessed the last of the five alleged incidents of abuse does not show that Children's Aid had the requisite *prior* notice of any propensity of Doe for sexual assault. *See Papelino v. Albany College of Pharmacy*, 633 F.3d 81, 94 (2d Cir. 2011) (granting summary judgment for defendant where record evidence reflected that defendant had notice of teacher's alleged sexual misconduct against the plaintiff, but only after the misconduct had occurred).

Absent sufficient, non-conclusory allegations as to the notice element of Mr. Ocasio's negligence claim, the Court should dismiss his first cause of action.[4]

---

[4] Mr. Ocasio also fails to state a cause of action by his further allegation that Children's Aid "was reckless, careless and negligent . . . in violating applicable laws, rules and regulations, including, but not limited to, New York State Social [Services] Law §§ 413 and 420, as well as article one hundred thirty (130) of the penal law of the State of New York." (Compl. ¶ 55). Because Children's Aid cannot, under New York law, have *respondeat superior* liability for alleged acts of criminal sexual abuse by its employees, the notion that Children's Aid could have liability for its employees' sex offenses under Article 130 of the New York Penal law is meritless. (*See* note 2, *supra*). The Complaint likewise states no basis to hold Children's Aid liable under sections 413 and 420 of the Social Services Law. The former statute identifies types of professionals and government officials who must make a report "when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." N.Y. Soc. Servs. L. § 413(1)(a). The latter statute imposes civil liability on persons who knowingly and willfully fail to comply with that reporting requirement. *Id*. § 420(2). However, section 413(1)(a) imposes its reporting requirement only on natural persons. Thus, Children's Aid had no direct reporting obligation under section 413(1)(a), and therefore could not be civilly liable under section 420(2) for knowing and willful failure to report. And while some courts have recognized that an institution could have liability under section 420(2) for causing its employee to fail to report, there are no allegations that Children's Aid did anything like that here. *Compare Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 785-86, 791 (2d Cir. 1983) (where an institution asked person with reporting obligation under N.Y. Soc. Servs. L. § 413(1)(a) to delete references to suspected sexual abuse from her report and did not pass on that person's warning about suspected abuse, the institution could face liability under the Social Services Law).

## II. THE COURT SHOULD DISMISS MR. OCASIO'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mr. Ocasio's second cause of action, seeking recovery for intentional infliction of emotional distress, fails as a matter of law for two reasons. First, this claim inaptly duplicates the negligence claim in Mr. Ocasio's first cause of action. Second, the conduct of which Mr. Ocasio accuses Children's Aid -- negligently failing to prevent Doe's abuse -- cannot, as a matter of law, constitute outrageous and intentional behavior of the sort that is necessary under New York law to ground an IIED claim. These defects, taken singly or together, compel dismissal of Mr. Ocasio's second cause of action.

### A. New York Law Bars Duplicative Claims for Intentional Infliction of Emotional Distress.

New York law permits claims for infliction of emotional distress "only as a last resort," when the conduct at issue is not "embraced by a traditional tort remedy." *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st Dep't 1998). Thus, under New York law "a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort . . . causes of action." *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637 (1st Dep't 2000) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983)). Applying these principles, New York courts routinely dismiss emotional distress claims that are based on conduct that "falls within the ambit of other traditional tort liability." *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 263 (1st Dep't 1995); *see also Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 146 A.D.2d 1, 7 (3d Dep't 1989) (dismissing emotional distress claim because underlying conduct was "within the scope of [plaintiff's] more traditional tort claim").

New York's prohibition on duplicative IIED claims applies with special force to Mr. Ocasio's claim here. In his second cause of action, Mr. Ocasio initially incorporates by reference the allegations supporting his claim for negligence. (Compl. ¶ 58). He then goes on to

allege that "*[b]y acting as aforesaid*, Defendant intentionally inflicted emotional harm upon Plaintiff." (*Id.* ¶ 59) (emphasis added).  Thus, Mr. Ocasio concedes that his IIED claim simply puts a different label on his traditional negligence claim.  That is precisely the sort of IIED claim that cannot proceed under New York law.

    B.  Mr. Ocasio Has Not Sufficiently Alleged a Claim
        for Intentional Infliction of Emotional Distress.

        Putting aside its duplication of Mr. Ocasio's negligence claim, the Court should dismiss his second cause of action because, by alleging only that Children's Aid failed to prevent the abuse that Doe allegedly perpetrated, it fails to state an IIED claim.  Under New York law, a plaintiff asserting an IIED claim must plead and prove "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Romero v. City of New York*, 839 F. Supp. 2d 588, 628-29 (E.D.N.Y. 2012) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).  The "extreme and outrageous conduct" element requires allegations of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy*, 58 N.Y.2d at 303 (citation omitted).  That "exceedingly high legal standard" excludes from liability even "offensive" conduct that is "likely [to] be considered reprehensible by most people." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 57 (2016) (noting that "of the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous") (emphasis in original) (citation omitted).  New York courts applying those principles have refused to find that an employer engaged in "extreme and outrageous" conduct, or that it acted with the requisite intent, where the only claim is that the employer failed to prevent misconduct

by its employee -- even if the underlying misconduct was "extreme and outrageous" so as to support an IIED claim against the employee.

The Appellate Division decision in *Gray v. Schenectady City School Dist.*, 86 A.D.3d 771 (3d Dep't 2011), provides the perfect example. There, plaintiffs alleged that a school district official "used the power and resources of his position . . . 'to conduct a reign of terror' upon plaintiffs, including vandalism of their property and threats to their safety." *Id.* at 771. Based on those allegations, the plaintiffs asserted claims against the school district and its official for IIED, and against the school district only for negligent supervision and retention. *Id.* at 771-72. On appeal from the denial of the school district's motion to dismiss the IIED claim, the Appellate Division pointed out that, while the official's alleged intentional conduct easily fit the elements of IIED, plaintiffs accused the school district of "mere inaction after receiving complaints about [the official's] behavior." *Id.* at 773. The panel reasoned that such inaction, although it "allegedly allowed [the official] to continue to engage in this behavior in spite of the notice regarding his actions," was not "the type of extreme and outrageous conduct that is 'utterly intolerable in a civilized community.'" *Id.* at 773 (quoting *Murphy*, 58 N.Y.2d at 303). The panel further noted the absence of any allegations that, in perpetrating the misconduct of which plaintiffs complained, the official had been "acting in furtherance of [the school district's] business" so as to make the school district vicariously liable for the official's behavior. *Id.* Accordingly, the Appellate Division reversed the court below and dismissed the IIED claim against the school district. *Id.*

The case for dismissal is much stronger here than it was in *Gray*. Like the school district in *Gray*, Children's Aid cannot, as a matter of law, have vicarious liability for Doe's alleged sexual abuse of Mr. Ocasio. (*See* note 2, *supra*). But unlike the school district in *Gray*,

there is no sufficient allegation that Children's Aid had *any* notice of the misconduct that Doe allegedly perpetrated against Mr. Ocasio such that, by inaction, it foreseeably allowed Doe's misconduct to occur or continue. Thus, *Gray* compels the conclusion that Children's Aid's alleged inaction in this case could not possibly rise to the level of the "extreme and outrageous conduct" necessary to support an IIED claim. Likewise, particularly in the absence of any notice of Doe's alleged abuse, there can be no serious contention that Children's Aid's alleged inaction reflected either intent to cause emotional distress to Mr. Ocasio, or reckless disregard of a substantial probability of doing so. Mr. Ocasio's IIED claim therefore is legally insufficient.

<u>Conclusion</u>

For all of the foregoing reasons, Children's Aid respectfully requests that this Court dismiss the Complaint in its entirety.

Dated: New York, New York
            December 20, 2019

Respectfully submitted,

Cohen & Gresser LLP


By: _____*/s/ Mark S. Cohen*_____
            Mark S. Cohen
            Stephen M. Sinaiko
            Luke M. Appling
800 Third Avenue
New York, New York   10022
(212) 957-7600
*mcohen@cohengresser.com*
*ssinaiko@cohengresser.com*
*lappling@cohengresser.com*

Attorneys for The Children's Aid Society